## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | ) **Case No.** 16-23458-JAD |
| Royal Flush, Inc., | ) |
|     **Debtor,** | ) **Chapter** 11 |
| Royal Flush, Inc., | ) |
|     **Movant,** | ) **Document No.** |
|     **vs.** | ) |
| First National Bank of Pennsylvania | ) |
|     **Respondent**. | ) |

### EXPEDITED MOTION TO USE OF CASH COLLATERAL
### AND GRANT ADEQUATE PROTECTION

The Debtor files this Motion for the Use of Cash Collateral and grant Adequate Protection pursuant to 11 U.S.C. §363 of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, and in support thereof avers as follows:

### JURISDICTION AND VENUE

1. This case was filed as a voluntary petition under Chapter 11 of the Bankruptcy Code on September 15, 2016.

2. The Debtor is a Debtor in Possession with the right to conduct business.

3. This proceeding arises under or in, or is related to, the Debtor's Chapter 11 case.

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157(a), 28 U.S.C. §1334(b), 11 U.S.C. §105, 11 U.S.C. §362; and Federal Rules of Bankruptcy Procedure – Rule 7001, and the Order of the United States District Court for the Western District of Pennsylvania referring all matters relating to pending bankruptcy cases to the Bankruptcy Court.

5. This motion is a "core proceeding" as defined in 28 U.S.C. §157(b) (2) (A), (D), (G), (K), (M) and (O).

6. Venue is proper in this District pursuant to 28 U.S.C. §1409(a).

## PARTIES

7. **First National Bank of Pennsylvania** loaned money to the Debtor and Carol A. Swank and a related entity, C Swank Enterprises, LLC ("C Swank"). There were 7 loans and the aggregate amount of the current debt as of September 21, 2016 is approximately $2,734,179.77 excluding attorneys' fees and costs. The following list references the loans:

*A. On or about April 9, 2014, the Debtor borrowed $ 64,800.00 from First National Bank of Pennsylvania and executed a security agreement in the Debtor's assets. It is assigned account number #45301225 and the balance due as of September 21, 2016; excluding attorneys' fees & costs is $30,846.67.*

*B. On or about April 9, 2014, the Debtor borrowed $ 100,000.00 from First National Bank of Pennsylvania and executed a security agreement in the Debtor's assets. It is assigned account number #45300205 and the balance due as of September 21, 2016; excluding attorneys' fees & costs is $47,603.00.*

*C. On or about April 9, 2014, the Debtor borrowed $ 750,000.00 from First National Bank of Pennsylvania and executed a security agreement in the Debtor's assets. It is assigned account number #45301210 and the balance*

*due as of September 21, 2016; excluding attorneys' fees & costs is $766,372.06.*

*D.   On or about May 23, 2014, the Debtor borrowed $ 80,640.00 from First National Bank of Pennsylvania and executed a security agreement in the Debtor's assets. It is assigned account number #45350410 and the balance due as of September 21, 2016; excluding attorneys' fees & costs is $29,888.13.*

*E.   On or about July 8, 2016, the Debtor borrowed $ 200,000.00 from First National Bank of Pennsylvania and executed a security agreement in the Debtor's assets. It is assigned account number #45925095 and the balance due as of September 21, 2016; excluding attorneys' fees & costs is$76,753.27.*

*F.   On or about April 28, 2015, Debtor guaranteed a $2,200,000.00 loan from First National Bank of Pennsylvania to C Swank and executed a security agreement in the Debtor's assets. It is assigned account number #45624140 and the balance due as of September 21, 2016; excluding attorneys' fees & costs is $1,516,019.32.*

*G.   On or about December 5, 2014, Debtor guaranteed $492,400.00 loan from First National Bank of Pennsylvania to C Swank and executed a security agreement in the Debtor's assets. It is assigned account number #45522085 and the balance due as of September 21, 2016; excluding attorneys' fees & costs is $266,697.32.*

8.   Royal Flush, Inc. is a business that operates in the construction business and the Oil & Gas industry.

9. The aforementioned loan Notes are secured by a lien in favor of the Respondent upon all of the Debtor's assets pursuant to certain Security Agreements and a Financing Statement which was filed as follows (the "Financing Statements"):

**Most Recently filed Perfection Documents**

| JURISDICTION | FILING DATE | FILING NO. | Debtor |
|---|---|---|---|
| Commonwealth of PA | March 15,2014 | 2014041506583 | Royal Flush |

10. As of the filing date, the amount due from the Debtor to the Respondent is approximately $ 2,734,179.77 plus interest and counsel fees.

**COUNT I**
**USE OF CASH COLLATERAL**

11. The Debtor incorporates the allegations in paragraphs 1-10 as though they were restated at length herein.

12. The Debtor has cash collateral as of the petition date consisting accounts receivable in the approximate amount of $2,303,000.00.

13. The Debtor has the need to use **First National Bank of Pennsylvania's** cash collateral, but the Respondent may be entitled to adequate protection

14. The Debtor needs to use the cash collateral to conduct its day to day business.

15. The Debtor has a reasonable likelihood of success in his reorganization.

16. The Court may grant the Debtor the right to use cash collateral pursuant to 11 U.S.C. § 363 (c) (3).

17. The Debtor may not be able to conduct business without the use of cash collateral; and its efforts to reorganize will be substantially impeded if it does not have the use of cash collateral.

18. The Debtor has agreed upon the following terms with the **First National Bank of Pennsylvania** for the use of "cash collateral" which terms are more fully set forth in the Stipulation Allowing Interim Use of Cash Collateral and Establishing Adequate Protection attached hereto as Exhibit "1":

    A.    <u>Reaffirmation of Loan Documents and Debt.</u>  The Debtor reaffirms and ratifies all of the Loan Documents, including all terms, conditions and obligations thereunder and further acknowledges and agrees that as of September 21, 2016, the indebtedness under the terms of the Loan Documents related to the Debtor's Loans is $2,734,179.77, together with additional interest at the contractual per diem rate plus late charges and fees and costs, including without limitation attorneys' fees and costs. Debtor further agrees that FNB shall have allowed fully secured claims for the indebtedness relating to the Loans, and the Debtor and its affiliates, including parents, subsidiaries, partners, joint ventures, divisions, related companies, agents, officers, directors, employees, heirs, successors and assigns, release and waive any and all defenses, offsets or claims, including any FNB liability claims or actions for cram-down, of whatsoever nature or kind to such indebtedness and any collateral of FNB.

    B.    <u>Consent to Use of Cash Collateral.</u>  Subject to the terms, conditions, covenants and agreements contained herein and limited to the budget for the Debtor attached hereto (with no greater than a ten (10%) percent variance for each item in the budget) as Exhibit "B" to the Stipulation for Interim Use of Cash Collateral and Establishing Adequate Protection, FNB hereby consents, retroactively, to the Debtor's use of the Cash Collateral on and after the Petition Date, which authority to use Cash Collateral terminates on the earlier of October 21, 2016 or the date set by the Court for a final hearing on cash collateral, 2016, unless terminated sooner upon five (5) business days written notice to the Debtor and its counsel via email due to an Event of Default. The Debtor shall not exceed the budget attached as Exhibit "B" or use funds from one budget category for other items unless the Debtor obtains express consent from FNB. Upon termination by FNB, the Debtor has a right to request an expedited hearing. Upon termination, the rights granted to the Debtor to use Cash Collateral shall cease to exist absent further Order of Court; provided, however, that the security interests, pledges, liens and other rights and protections granted to FNB hereunder shall remain in effect until the indebtedness due to FNB under the terms of the Loan Documents is paid irrevocably in full.

    C.    <u>Strict Compliance with the Budget.</u> The Debtor shall be permitted to use Cash Collateral only for the purposes set forth in the Budget, and only up to the respective Aggregate Amount of disbursements set forth in the Budget for each category of expense and for each month up to and until the end of

    this Stipulation on the earlier of October 21, 2016 or the date set by the Court for a final hearing on cash collateral (with no greater than a ten (10%) percent variance for each item in the Budget).  FNB has relied on the Budget in consenting to the entry of this Stipulation and Order.  The Debtor shall timely and strictly comply with the Budget in all respects, and FNB may, but shall have no duty to, monitor such compliance.

D.    <u>Adequate Protection Liens.</u>  As partial adequate protection for FNB's interest in and to the Cash Collateral and Collateral, FNB is granted a replacement lien on and a security interest in all post-petition property of the Debtor of the same type FNB held pre-petition with first position senior priority (all such post-petition property being hereinafter collectively referred to as, the "Post-Petition Collateral").  The liens, pledges and security interests granted to FNB pursuant to this Stipulation are in addition to, and not in substitution for its existing first priority security interests and liens held by FNB, and shall be deemed perfected without reliance upon the filing of any financing statements or recordation of any documents and it shall not be required to obtain security or similar agreements or corporate resolutions, file further financing statements or record any documents, or take any other steps under applicable law to create or perfect the security interests, pledges and liens granted in this Stipulation.  Nonetheless, FNB may, but shall not be required to, file financing statements or other documents in any jurisdiction or take any other action in order to validate or perfect the security interest granted to and under this Stipulation and related instruments, documents and agreements.  If FNB in its sole discretion chooses to file financing statements or other documents or otherwise confirm perfection of such security interests, the Debtor shall, at FNB's request, execute the same, and such financing statements or similar documents shall be deemed to have been filed or recorded and perfected on the Petition Date, *nunc pro tunc*.  The Automatic Stay of §362(a) of the Bankruptcy Code is modified to the extent necessary to effect the provisions of this provision. The security interest, pledges and liens granted to FNB hereunder shall remain in effect until all obligations, liability and indebtedness of the Debtor to FNB under the terms of the Loan Documents have been irrevocably paid in full.

E.    <u>Negative Pledge.</u>  The Debtor shall not, without court approval, grant a security interest or lien in the Collateral, Cash Collateral or the Post-Petition Collateral to any party-in-interest other than the Bank, and all parties-in-interest are enjoined from pursuing FNB's Collateral and Cash Collateral, provided however nothing in this Stipulation shall be deemed to effect the priority or validity of any validly perfected UCC-1 purchase money security interest lien held by any third party.

F.    <u>Administrative Claim.</u>  As additional partial adequate protection for Debtor's use, consumption, sale, collection or other disposition of any of the Cash Collateral, Collateral and/or Post-Petition Collateral (including Post-Petition

        Cash Collateral), FNB shall be entitled to an administrative priority pursuant to §507(b) of the Bankruptcy Code to the extent such use, consumption, sale, collection or other disposition results in any diminution in the value of FNB's security interest in or lien upon such Cash Collateral, Collateral and Post-Petition Collateral. Without limiting the generality of the preceding sentence, the foregoing treatment and priority is are granted as adequate protection in exchange for Debtor's rights to use FNB's Collateral and Cash Collateral for purposes specified in the Budget. Such administrative claims shall have priority over any other claims of the kind specified in sections 503(b) or 507(a) and (b) of the Bankruptcy Code except it shall be of the same priority (and paid *pari passu* if necessary) as amounts owed for only U.S. Trustee fees and shall continue notwithstanding the appointment of a Chapter 11 trustee or to the extent provided by the Bankruptcy Code, the conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

G.    <u>Adequate Protection Payments.</u>  As further protection for FNB's interests in the Cash Collateral and Collateral, the Debtor shall immediately pay $14,371.06 to FNB on or before October 20, 2016.  The foregoing payments are interim payments only and are not conclusive of adequate protection to FNB.  FNB reserves the right to seek additional adequate protection and this Stipulation, including receipt of the interim payments shall not be construed against FNB.  Notwithstanding the termination of the right to use Cash Collateral pursuant to Section 3 herein or as a result of an Event of Default, as hereinafter defined, the security interests, liens and encumbrances granted herein and the Debtor' obligations to make adequate protection payments as required by this Section shall continue to remain until the indebtedness due under the terms of the Loan Documents is indefeasibly paid in full. All payments shall in FNB's sole discretion be applied and allocated by FNB to the indebtedness under the Loans in such manner and order as FNB shall determine in its sole discretion.

H.    <u>Financial Reporting.</u>  The Debtor shall comply with all financial reporting requirements imposed by the U.S. Trustee's Office and the Bankruptcy Code and Rules.  On a monthly basis, the Debtor shall provide FNB with copies of the monthly reports on the same forms as submitted to the U.S. Trustee.  In addition to the above-referenced reports, the Debtor shall provide to FNB on or before October 1, 2016 financial statements, including balance sheets of at least August 31, 2016, income statements through August 31, 2016 and for each month following thereafter, account receivable and accounts payable ledgers and other financial statistics, required by the terms of the Loan Documents, and such additional financial information and reports, as FNB shall reasonably require from time to time. Each Monday, beginning October 3, 2016, Debtor shall provide to FNB a cash receipts and disbursements report for the prior week and a detailed budget of the projected cash receipts and disbursements for the current week.

I. <u>Inspections.</u>  The Debtor grants to FNB, its agents, designees or other professional persons, the right to inspect and appraise the any collateral and to review the Debtor's books and records during ordinary business hours upon 2 days prior notice; provided that if an Event of Default exists, no prior notice shall be necessary.  The Debtor shall cooperate fully with any such inspection or appraisal.

J. <u>Sale Proceeds.</u>  The proceeds from the sale of any Collateral or Post-Petition Collateral or any insurance proceeds arising from a casualty or other insured loss of Collateral or Post-Petition Collateral, shall not be available for use as Cash Collateral but shall be delivered to FNB for permanent reduction of the indebtedness due under the terms of the Loan Documents, with all such payments to be applied by FNB to the indebtedness under the terms of the Loan Documents in such order and manner as FNB shall determine in its sole discretion.

K. <u>Taxes; Tax Refunds; Government Credits; Etc.</u>  The Debtor shall cooperate reasonably and fully with FNB, and shall, among other things, execute any and all documents required to effect collection of any tax refunds, government grants or credits or insurance proceeds (hereinafter collectively "Refunds"), if any, that may be due or become due to the Debtor or FNB.  Said Refunds shall be paid to FNB to the extent that FNB is entitled to the same, pursuant to the Loan Documents.

L. <u>Insurance Policies.</u>  The Debtor warrants and represents to FNB that its insurance policies required under the terms of the Loan Documents are in full force and effect and that the policies fully cover FNB's Collateral, Post-Petition Collateral, and Cash Collateral, including equipment, inventory, and vehicles.  The Debtor further warrants and represents that FNB is named as loss payee on the Debtor's policies and all such policies comply in all respects with the requirements set forth in the Loan Documents.  To the extent FNB is not named as loss payee, the Debtor shall take immediate steps to have the insurance policies name FNB as loss payee so that any claims to be paid, including claims for losses that have occurred prior to this Stipulation, include FNB as loss payee.  The Debtor also warrants and represents that any proceeds from any loss of any collateral occurring any time in 2016 or prior, including, but not limited to, proceeds from any insurance claim made, shall be paid directly to FNB.  The Debtor hereby authorizes the Debtor's insurance company to directly pay any insurance loss proceeds directly to FNB.

M. <u>DIP Accounts.</u>  In the event the Debtor have not opened Debtor-in-Possession accounts, they shall immediately do so at FNB and utilized said accounts during the pending of the Bankruptcy case.

N. <u>Events of Default</u>.  Any one or more of the following events shall constitute an "Event of Default" under this Stipulation:

      (a).    The Debtor's breach of any provision, term or condition of this Stipulation, failure to timely provide the financial information, reports, comply with the budget attached as **Exhibit "B"** to the Stipulation for Interim Use of Cash Collateral and Establishing Adequate Protection or provided budget detail requested by FNB;

      (b).    The conversion or dismissal of the Debtor's Chapter 11 case, or application or motion by or against the Debtor for such conversion or dismissal, unless FNB consents to such dismissal or conversion;

      (c).    The refusal or failure of the Bankruptcy Court to approve this Stipulation;

      (d).    The failure of the Debtor to observe or perform any other term, condition, covenant or provision under the Loan Documents after any applicable cure period, except to the extent modified by this Stipulation; or

O.    <u>Remedies</u>. Upon the occurrence of any Event of Default arising from a failure to comply with the payment requirements set forth in herein which is not cured within five (5) business days after FNB shall have provided written notice to the Debtor and its counsel via email of such Event of Default or the failure to cure any other Event of Default within five (5) days after FNB shall have provided written notice to the Debtor and its counsel via email of such Event of Default, FNB's consent to the continued use of its Cash Collateral shall automatically terminate without any further action or notice from FNB or the Bankruptcy Court and FNB shall be free to move for relief from the automatic stay or take such other action as it deems necessary.

P.    <u>Waiver of Rights</u>.  This Stipulation shall not prejudice the right of FNB to seek relief from the Automatic Stay under §362 of the Bankruptcy Code. This Stipulation does not and shall not constitute a waiver by FNB of any of its rights, including, without limitation, those with respect to the Collateral, Cash Collateral, any other collateral of FNB or any other property of the Debtor, the Debtor's bankrupt estate.  The Debtor further acknowledges and agrees that this Stipulation is a supplement and in addition to the Loan Documents and is not in lieu thereof.  Nothing contained in this Stipulation shall constitute, or shall be deemed to constitute, an admission by FNB that its interests are adequately protected within the meaning of section 361 of the Code on the date of this Stipulation or at any future date nor prejudice FNB's right to assert that it is entitled to adequate protection by reason of any failure of the Debtor to comply with covenants set forth in the Loan Documents or this Stipulation.

**WHEREFORE,** the Debtor requests this Honorable Court to authorize the Debtor's use of cash collateral on the terms and conditions as provided for herein and permit the Debtor to operate in the ordinary course of business until a final hearing on the use of cash collateral can be heard by this Court.

### Count II
### Offer of Adequate Protection

19. The Debtor incorporates the allegations in paragraphs 1-18 as though they were restated at length herein.

20. The Debtor has offered adequate protection to the **First National Bank of Pennsylvania** and attempted to create the framework of a consensual cash collateral agreement and they are unable to reach terms.

21. The Debtor is willing to adequately protect the secured creditor:

   A. Commencing in October 2016, the Debtor will pay the secured creditor $14,371.06 on or before October 20, 2016;

   B. Between now and the earlier of October 21, 2016 or the date set by the Court for a final hearing on cash collateral, the Debtor will attempt to work out a permanent Cash Collateral Order

   C. The Debtor will provide the secured creditor with a replacement lien on all property acquired after the commencement of the case;

   D. The Parties have agreed upon a aforementioned Stipulation which allows the use of cash collateral and granting it adequate protection (See Exhibit "1" attached hereto and incorporated herein).

22. The offer of adequate protection and the authority to use cash collateral should allow the Debtor to preserve operations.

**WHEREFORE**, the Debtor prays this Honorable Court enter the attached Order approving the Stipulation for Interim Use of Cash Collateral and Establishing Adequate Protection which, conditions the Debtor's use of cash collateral and grants the **First National Bank of Pennsylvania** certain adequate protection as authorized pursuant to the Bankruptcy Code, and the Debtor prays for such further relief as this Court deems just and proper.

**Respectfully Submitted,**

**Dated:** September 29, 2016

**BY:**   /s/ Donald R. Calaiaro
**Donald R. Calaiaro, Esquire, PA I.D. #27538**
**dcalaiaro@c-vlaw.com**
**David Z. Valencik, Esquire,   PA I.D. #308361**
**dvalencik@c-vlaw.com**
**CALAIARO VALENCIK**
**428 Forbes Avenue, Suite 900**
**Pittsburgh, PA  15219-1621**
**(412) 232-0930**